```
           IN THE UNITED STATES DISTRICT COURT
        FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
                     AT CHARLESTON
```

**KENNETH EDWARD CHANCE, JR.,**

    **Plaintiff,**

**v.**                                               **CIVIL ACTION NO. 2:08-1156**

**JIM SPEARS,** *et al.***,**

    **Defendants.**

## MEMORANDUM OPINION

Before the court is the First Amended Complaint of plaintiff, an inmate at Mount Olive Correctional Complex ("MOCC"). (Doc. No. 55.) Plaintiff alleges various Eighth Amendment claims, as well as a Fourteenth Amendment Equal Protection claim relating to the MOCC smoking ban applicable to inmates. By Standing Order entered on August 1, 2006, and filed in this case on October 7, 2008, this matter was referred to United States Magistrate Judge Mary E. Stanley. Pursuant to 28 U.S.C. § 636(b), the Standing Order directs Magistrate Judge Stanley to submit proposed findings and recommendation concerning the disposition of this matter.

Magistrate Judge Stanley submitted her Proposed Findings and Recommendation on August 31, 2009. The magistrate judge made the following recommendations: (1) that the court grant the motion to dismiss filed by Wexford Health Sources (Doc. No. 20), (2) grant the motion to dismiss filed by the West Virginia Division of Purchasing and John/Jane Doe (Doc. No. 23), (3) grant the motion to dismiss filed by Jim Rubenstein, Charlene Sotak, David Ballard, and Paul Lyttle (Doc. No. 25), and (4) to the extent plaintiff's

amended complaint contains allegations not addressed in these motions, or to the extent the amended complaint contains allegations against defendants Jim Spears, Dr. Ebenezer Obenza, and Dr. Suhbash Gajendragadkar, who have not been properly served with process, dismiss those claims as being frivolous or for failure to state a claim upon which relief can be granted under 28 U.S.C. § 1915A. (Doc. No. 54.)

In accordance with the provisions of 28 U.S.C. § 636(b), the parties were allotted ten days, plus three mailing days, in which to file any objections to Magistrate Judge Stanley's Proposed Findings and Recommendation, a deadline which the court extended upon plaintiff's motion. Plaintiff submitted timely objections of which the court has conducted a *de novo* review. See Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985). On September 30, 2009, the court overruled plaintiff's objections in part and sustained them in part, and indicated that an explanatory memorandum opinion would follow forthwith (Doc. No. 62); the court now issues its memorandum opinion.

## I. **Plaintiff's Claims and Objections**

As noted above, Plaintiff's amended complaint alleges claims under the Eighth Amendment to the United States Constitution, as well as a Fourteenth Amendment Equal Protection claim relating to the smoking ban at MOCC. (Doc. No. 55.) Because plaintiff made no objection to the magistrate judge's recommended dismissal of the Fourteenth Amendment claim (Doc. No. 61 at 2), the court addresses only plaintiff's assertions that he is subject to cruel and unusual

punishment. These claims may be divided into two categories: 1) those relating to the provision of clothing and personal hygiene items; and 2) those relating to plaintiff's medical care while incarcerated.

**A.      Provision of Clothing and Personal Hygiene Items**

With respect to the first category of Eighth Amendment claims, the magistrate judge concluded that plaintiff has failed to show a sufficiently serious deprivation of a basic human need, and has failed to show a significant injury resulting from the conditions he challenges. (Doc. No. 54 at 8-9.) As such, she recommended dismissal for failure to state a claim upon which relief may be granted. In his objections, plaintiff reminds the court that MOCC is situated atop a mountain, and that the layout of the facility causes inmates to venture frequently into the elements, which are severe at times. (Doc. No. 61 at 19.) He continues, "It certainly cannot be denied that it is well recognized the impact upon the human body that severe elements has." (Id.) He proceeds to describe the clothing and personal hygiene items allotted to prisoners, and refers to an alleged "kickback scheme" between defendant Jim Rubenstein and Keefe Commissary Network, which operates the prison commissary. (Id. at 19-21.)

An inmate alleging that his conditions of confinement violate the Eighth Amendment prohibition on cruel and unusual treatment faces a very difficult burden. He must demonstrate that the deprivation in question was objectively sufficiently serious, and

-3-

that, from a subjective standpoint, the officials acted with a sufficiently culpable state of mind. Wilson v. Seiter, 501 U.S. 294, 298 (1991). Although the objective component of an Eighth Amendment action is contextual and should be responsive to contemporary standards of decency, it is clear that a conditions-of-confinement claim will stand only where an extreme deprivation is proven. Hudson v. McMillian, 503 U.S. 1, 8 (1992)(citing Estelle v. Gamble, 429 U.S. 97, 103 (1976)). "Because routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation.'" Hudson, 503 U.S. at 8 (citing Rhodes v. Chapman, 452 U.S. 337, 347 (1981)).

    A successful conditions-of-confinement claim will therefore allege either "a serious or significant physical or emotional injury resulting from the challenged conditions," Strickler v. Waters, 989 F.2d 1375, 1381 (4th Cir. 1993), or "a substantial risk of such serious harm resulting from the prisoner's exposure to the challenged conditions," De'Lonta v. Angelone, 330 F.3d 630, 634 (4th Cir. 2003)(citing Helling v. McKinney, 509 U.S. 25, 33-35 (1993)). Although plaintiff makes conclusory assertions about the potential harm that may be wrought without additional protective clothing, his allegations simply do not rise to the level of extreme deprivation necessary to state a conditions-of-confinement violation. His objections on this point are therefore overruled.

**B.   Medical Treatment**

As for his claims relating to medical treatment, he must allege "facts sufficient to demonstrate a deliberate indifference to a serious medical need." Estelle, 429 U.S. at 104.  Deliberate indifference is established where a prisoner's medical treatment is "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990).  A medical need is sufficiently serious for Eighth Amendment purposes where it has been diagnosed by a physician as mandating treatment, or where it is simply "so obvious that a lay person would easily recognize the necessity for a doctor's attention." Gaudreault v. Munic. of Salem, Mass., 923 F.2d 203, 208 (1st Cir. 1990).

An inmate alleging an Eighth Amendment violation based on inadequate medical care must show that a prison official subjectively "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994).  It is not enough under this standard that the inmate was the victim of negligence or even medical malpractice, and "[d]isagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985).  Notably, the right to treatment is "limited to that which may be provided upon a

reasonable cost and time basis and the essential test is one of medical *necessity* and not simply that which may be considered merely *desirable*." Bowring v. Godwin, 551 F.2d 44, 47-48 (4th Cir. 1977)(emphasis added).

Plaintiff complains of essentially three medical conditions for which he alleges inadequate treatment: a urinary tract blockage (Doc. No. 55 at 9-12), muscle spasms (id. at 13-14), and spinal and neurological problems (id. at 15-20).  His allegations relating to the first and third conditions appear to overlap, however, and the court will address them together.[1]

Three urologists, Dr. Eggerton, Dr. Jose Serrato, and Dr. Julio Davalous, have examined plaintiff in connection with his urinary tract condition, performing various diagnostic tests and prescribing different medications in an attempt to resolve plaintiff's symptoms.  Plaintiff alleges that they have been unable to reach a diagnosis, and that his symptoms persist:

> Plaintiff has consistently complained of difficulty in urinating, having to always strain to urinate . . .; the

---

[1] Plaintiff's amended complaint also includes a claim against the West Virginia Division of Purchasing for deliberate indifference arising from the Division's authorizing the issuance of a contract between the State of West Virginia and Wexford to provide health care services to the state's prison inmates given Wexford's "established propensities for deliberate indifference to inmate serious medical needs, by not providing . . . for an independent medical expert to review records of any inmate asserting being denied adequate medical care for serious medical needs, in violation of the 8th Amendment." (Doc. No. 55 at 7.)  Because the magistrate judge's recommendation that this claim be dismissed was grounded on her conclusion that plaintiff's underlying deliberate indifference claims must fail – a finding which the court does not adopt – the court declines to dismiss this claim at this time, as set forth below.

> normal reasons for this difficulty, being stricture or enlarged prostate or bladder issues have all been ruled out; the degree of blockage has been increasing to the point that Plaintiff often is unable to urinate until it feels as though the bladder is going to burst; Plaintiff has been complaining of "shooting pains" down his legs . . . [for] which Plaintiff is currently prescribed 600mgs, of Neurontin, 3 times a day; Plaintiff has as well complained of a continual pain, as if in a line down his right leg; since 1998 Plaintiff has experienced varying degrees of numbness, loss of touch sensation to body parts on the right side of the body (which includes the genital/groin region); starting in July, 2008, there has been an episode of complete loss of bladder control during sleep, and sporadic bouts of partial loss when sleeping which is due, at least in part, because of the total numbness that occurs at times when Plaintiff lies down because of an unknown medical condition . . . .
>
> On or about July 20, 2008, Plaintiff suffered an episode of serious lower back pain stemming from being bent over scrubbing for a period of time, said lower back pain lasted a few days; on July 21, 2008, Plaintiff suffered a partial loss of bladder control in his sleep, at least in part due to numbness throughout the genital/groin region while Plaintiff was sleeping; on July 23, 2008, Plaintiff suffered a complete loss of bladder control in his sleep, due at least in part . . . to numbness throughout the genital/groin region . . . .

(Id. at 10-11.)

The amended complaint also alleges that, in February 2008, Dr. Davalous sent a letter to MOCC stating, in plaintiff's words, "that an MRI might be necessary of Plaintiff's spine, noting complaints of lower back pain." (Id. at 10.) "With no actual diagnosis of what the serious medical condition was with Plaintiff's urinary tract," the complaint continues, "Plaintiff pursued attempts to have an MRI done on his lumbar spine, to which defendant Obenza informed Plaintiff that Wexford 'does not do MRI's . . . .'" (Id.)

Plaintiff also asserts that he suffers from "shooting nerve pains, neuropathy primarily down the right leg," for which Dr. H.S. Ramesh, a pain specialist, prescribed him Cymbalta in April of 2007.[2] (Id. at 15.)  He states that Dr. Obenza later replaced this drug with Neurontin, an alternative medication "which over time was increased by defendant Gajendragadkar to 800mgs, three times a day." (Id.)  Plaintiff states that the Neurontin provided "moderate relief to the painful neuropathy pain which Plaintiff suffers from daily/nightly, sometimes the pains being so bad that Plaintiff's right leg has given out on him." (Id.)  Despite a risk of stroke associated with abruptly suspending the medicine, the Neurontin prescription was allowed to lapse a number of times, which plaintiff attributes to "the policy of Wexford to allow medications to expire, since it occurs all the time, to increase profit on not having to provide medications during the lapse time." (Id. at 16.)  Plaintiff further alleges that in late December 2008 or in early 2009, Dr. Gajendragadkar stopped prescribing Neurontin for plaintiff and all other inmates because Wexford removed Neurontin from availability as a "non-formulary drug" without providing an alternative medication. (Id.)  In May 2009, plaintiff was prescribed Neurontin by internal medicine specialist Dr. Paul, but it is not clear whether plaintiff has been receiving the medication since that time.  (Id. at 16-17.)

---

[2] It appears that Dr. Ramesh also recommended that plaintiff receive an MRI in connection with his back pain.  (Doc. No. 55 at 18.)

Plaintiff also makes a number of allegations relating to his chronic neck pain and "severe/debilitating headaches," which he says Dr. Ramesh diagnosed as "Cervical Facet syndrome and Occipital neurologia." (Id. at 17.) He claims to have had some relief from these conditions through "trigger-point" injections and the medication Baclofen, but asserts without explanation that Dr. Gajendragadkar reduced the dosage of Baclofen and denied him additional injections. (Id. at 17-18.) Plaintiff further takes issue with Dr. Gajendragadkar's "absolutely ludicrous diagnosis that Plaintiff's neck (at the time 'chronic')(now CONSTANT) lower back pain was 'multifactorial,' being the cause of an intestinal and kidney problem . . . ." (Id. at 18.)

In her PF & R, the magistrate judge concluded that the amended complaint evinces a mere disagreement between plaintiff and the MOCC medical staff as to the appropriate course of treatment. (Doc. No. 54 at 20-21.) With respect to the failure to refer plaintiff for an MRI, the PF & R notes Wexford's argument that "[t]he allegations of the Complaint clearly show that Dr. Obenza had listened to plaintiff's complaints and decided on a course of treatment to which plaintiff disagreed." (Id. at 19.)

As an initial matter, the court must conclude that the conditions at issue – manifested by inability to urinate followed by loss of bladder control, chronic severe pains, shooting pains, and numbness – are objectively serious medical problems by Eighth Amendment standards. While it is clear that plaintiff was examined and treated several times for these symptoms, that does not end the

-9-

court's inquiry. "Although it is true that neither medical malpractice nor a mere disagreement with a doctor's medical judgment amounts to deliberate indifference, to prevail on an Eighth Amendment claim 'a prisoner is not required to show that he was literally ignored.'" Greeno v. Daley, 414 F.3d 645, 653 (7th Cir. 2005)(internal citations omitted).

Furthermore, the ability of prison officials to limit inmates' treatment to "that which may be provided upon a reasonable cost and time basis," Bowring, 551 F.2d at 47-48, does not extend so far that officials may deny an inmate necessary treatment for reasons utterly divorced from the inmate's care. Plaintiff has alleged that, despite the absence of a diagnosis and effective treatment for plaintiff's condition, he was denied a recommended MRI because of a policy of Wexford prohibiting such testing. He further alleges that the medication Neurontin, which had been effective at treating the shooting pains of his neuropathy, was discontinued from use by Wexford for financial reasons and without being replaced by an alternative medication. Construing his pro se amended complaint liberally, the court must conclude that it sets forth "enough facts to state a claim to relief that is plausible on its face" with respect to his Neurontin prescription and the refusal to refer plaintiff for an MRI. Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007). See De'Lonta v. Angelone, 330 F.3d 630, 635 (4th Cir. 2003)(district court erred in granting summary judgment where evidence supported inference that denial of treatment was based solely on policy, rather than on medical

judgment); Hartsfield v. Colburn, 491 F.3d 394, 401 (8th Cir. 2007)("the inmate's medical needs should take precedence when there is tension between those needs and a prison's alleged need to adhere strictly to prison policy").

In contrast, however, plaintiff does not allege that Dr. Gajendragadkar's refusal of additional "trigger-point" injections and reduced dosage of Baclofen were grounded on anything other than medical judgment. As such, these allegations do not amount to more than a disagreement between plaintiff and his physician.

Similarly unavailing are plaintiff's allegations relating to his muscle spasms. Plaintiff alleges that he suffers from "frequent muscle spasms, commonly called 'charlie horses,' but calf muscle spasms have and are always the most frequent and painful of these." (Doc. No. 55 at 13.) He takes issue with Dr. Obenza's prescribed treatment of a magnesium supplement, which he asserts caused a "nearly nine (9) month serious flare-up" of his Irritable Bowel Syndrome. (Id.) Plaintiff also asserts that he should have been referred to a specialist for treatment, and that Dr. Obenza and Wexford failed generally to provide adequate medical care for the muscle spasms. (Id.)

The pain and muscle spasms plaintiff describes do not amount to the type of objectively serious injury cognizable under the Eighth Amendment. Moreover, to the extent plaintiff asserts error on the part of Dr. Obenza in treating him with magnesium supplements, his allegations are more aptly characterized as

-11-

negligence, which is insufficient to state an Eighth Amendment violation.  See Wright, 766 F.2d at 849.

## II.   Conclusion

For the foregoing reasons, the court **OVERRULES IN PART** and **SUSTAINS IN PART** the plaintiff's objections.  (Doc. No. 61.)  The court further **DENIES** the pending motions to dismiss (Doc. Nos. 20, 23, 25) except to the extent they relate to plaintiff's Equal Protection and Eighth Amendment conditions-of-confinement claims, which the court **DISMISSES**.

As directed in the court's Order of September 30, 2009, this matter is referred to Magistrate Judge Stanley for further proceedings consistent with this opinion.  To the extent the magistrate judge's recommended dismissal of defendants Rubenstein, Sotak, Ballard, and Lyttle ("the DOC defendants"), and the West Virginia Division of Purchasing was grounded on the conclusion that the amended complaint fails to state a valid deliberate indifference claim against defendants Wexford, Obenza, and Gadjendragadkar, the claims against all of these defendants should be reevaluated in light of the court's conclusion that plaintiff has – to the limited extent outlined above – stated a valid claim against his health care providers.  The court further notes its agreement with the chronological limitation on plaintiff's claims set forth by the magistrate judge at pages 18 to 19 of the PF & R. (Doc. No. 54 at 18-19.)

The Clerk is directed to forward a copy of this Order to the plaintiff, pro se, and to all counsel of record.

IT IS **SO ORDERED** this 10th day of November, 2009.

                ENTER:

                *David A. Faber* (signature)

                David A. Faber
                Senior United States District Judge