```
          UNITED STATES DISTRICT COURT
         SOUTHERN DISTRICT OF WEST VIRGINIA

                      CHARLESTON
```

**KENNETH EDWARD CHANCE, JR.,**

    **Plaintiff,**

v.                                            Case No. 2:08-cv-01156

**JIM RUBENSTEIN, Commissioner,**
**West Virginia Division of Corrections,**
**CHARLENE SOTAK, Inmate Grievance Coordinator,**
**West Virginia Division of Corrections,**
**DAVID BALLARD, Warden,**
**Mount Olive Correctional Complex,**
**WEST VIRGINIA DIVISION OF PURCHASING,**
**WEXFORD HEALTH SOURCES, INC.,**
**PILAR OBENZA, as Executrix and**
**Personal Representative of the**
**Estate of DR. EBENEZER OBENZA, M.D., and**
**DR. SUHBASH GAJENDRAGADKAR, M.D.,**

    **Defendants.**

## PROPOSED FINDINGS AND RECOMMENDATION

Pending before the court is the motion for summary judgment filed by the West Virginia Division of Purchasing ("DOP") (docket # 88), on March 25, 2010. By Order entered March 30, 2010, Plaintiff received a notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975). He filed a response in opposition (# 96), and DOP filed a reply (# 100). This matter is referred to the Honorable David A. Faber, Senior United States District Judge, and it is referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B).

**Procedural History Related To The Pending Motion**

Plaintiff filed his initial Complaint (# 2) on October 7, 2008.  Plaintiff's allegations against the DOP, as stated in his First Amended Complaint (# 51), recite that defendant Wexford Health Sources, Inc. ("Wexford") was the vendor of health services to inmates at Mount Olive Correctional Complex ("MOCC") in 1997, when the then-warden, George Trent, filed a complaint against Wexford, and Wexford lost its contract with the State of West Virginia.  (First Amended Complaint, # 51, at 6.)  Plaintiff asserts that in 2008, when DOP awarded the contract to Wexford, Wexford resumed its 1997 practices of delaying prescriptions, increasing sick call response times, and refusing outside referrals to consultants.  Id.  Plaintiff alleges that the DOP was deliberately indifferent to MOCC inmates when it awarded the contract to Wexford without requiring oversight and monitoring of Wexford's performance, including use of an independent medical expert.  Id. at 7.  He claims that the DOP has "wantonly inflicted pain and suffering upon Plaintiff by authorizing issuance of a contract between the State of West Virginia and Wexford," and "exhibiting deliberate indifferene to Plaintiff's serious medical needs by failing to provide for proper oversight of Wexford."  Id.  The relief sought is an injunction requiring the DOP to sever its contract with Wexford and to establish a system to handle inmates' complaints about health services, and a declaratory judgment that

Plaintiff's Eighth Amendment right to be free of cruel and unusual punishment has been violated.

In Proposed Findings and Recommendation filed August 31, 2009 (# 54), the undersigned wrote the following:

> The undersigned agrees that the allegations against the DOP, and its agents or employees, especially in light of the prior proposed findings that Plaintiff's First Amended Complaint fails to state a sufficient claim of deliberate indifference to his serious medical needs against the other defendants, are also insufficient to state a valid Eighth Amendment claim. Accordingly, the undersigned proposes that the presiding District Judge **FIND** that the Plaintiff's First Amended Complaint fails to state a claim upon which relief can be granted against the West Virginia Division of Purchasing or its unnamed agents or employees.

(# 54, at 25.)

In a Memorandum Opinion filed on November 10, 2009 (# 68), Judge Faber concluded:

> To the extent the magistrate judge's recommended dismissal of . . . the West Virginia Division of Purchasing was grounded on the conclusion that the amended complaint fails to state a valid deliberate indifference claim against defendants Wexford, Obenza, and Gadjendragadkar, the claims against all of these defendants should be reevaluated in light of the court's conclusion that plaintiff has - to the limited extent outlined above - stated a valid claim against his health care providers.

(# 68, at 12.) The limited claims of alleged deliberate indifference to Plaintiff's serious medical needs which Judge Faber permitted to go forward are denial of a recommended MRI and discontinuation of the medication Neurontin, without its replacement with a suitable alternative. Id. at 10. With respect

to the DOP, the issue is whether the DOP displayed deliberate indifference to Plaintiff's serious medical needs when it awarded a contract to Wexford, in light of Wexford's past performance, and failed to provide for proper oversight. (Order entered November 18, 2009, # 69, at 2.)

## Positions of the Parties

The DOP appropriately introduces its argument by noting that Plaintiff's allegations assume, imply, or state "several theories of liability and seek[] remedies for which the DOP can identify no supporting rule or law." (Mem., # 89, at 4.)

> The Plaintiff asserts no allegations relating to the substance or legality of the procedure that the DOP actually followed in awarding the contract at issue to Wexford. Rather, Plaintiff alleges that the DOP "served as the vehicle to the delivery of deliberate indifference by defendant Wexford upon inmates at the MOCC when [the DOP] issued a new contract to Wexford[.]" [# 51, at 7.] While interesting as both a metaphor and a concept, the DOP is unable to identify any case law that would serve to legitimize this allegation. Were this approach to be taken seriously, any person, whether an individual or legal entity, who participated in the hiring of, or contract negotiation with, a person ultimately alleged to have acted with deliberate indifference, could be added as a defendant on the grounds that such person "served as a vehicle" for the "delivery of deliberate indifference." An obvious issue is whether the Court can identify an unbroken chain of causation that stretches from the hiring or contract process to the harm purportedly inflicted on an individual inmate. Put most simply, however, the DOP can identify no existing law that would recognize Plaintiff's claim for "vehicular" indifference to serious medical needs.

Id. at 6. The DOP argues that there is no evidence that it failed to follow its appropriate process in awarding the contract to

4

Wexford, id. at 8, and that it was deliberately indifferent to Plaintiff's serious medical needs, id. at 11. In particular, DOP relies on the holding in Farmer v. Brennan, 511 U.S. 825, 837 (1994), that an inmate must show that prison officials acted with deliberate indifference.

Plaintiff's Response does not dispute that DOP followed applicable procedures in awarding the contract to Wexford. (# 96, at 3-4.) He contends that he is a third-party beneficiary of the State's contract with Wexford and that he should have a right to demand compliance with their agreement, citing W. Va. Code § 55-8-12. Id. at 4. He insists that the Court should require the State to provide a complaint mechanism so that Wexford's contract is monitored, and breaches of it are addressed. Id. at 5.

DOP's Reply reiterates that there is no authority to support Plaintiff's theory. (# 100.)

### Analysis

Plaintiff's amended complaint specifically states that it is a civil rights complaint for claims relating to conditions of confinement at MOCC. (# 51, at 1.) When his claim against DOP is compared with the well-settled authority of the Supreme Court of the United States concerning conditions of confinement, it is apparent that Plaintiff cannot ever satisfy the elements of 42 U.S.C. § 1983 with respect to the DOP.

In Farmer v. Brennan, 511 U.S. 825, 832 (1994), the Supreme

5

Court held that the Eighth Amendment to the Constitution "imposes duties on [prison] officials who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" The Supreme Court emphasized that "[p]rison conditions may be 'restrictive and even harsh.'" Id., at 833.

To sustain an Eighth Amendment claim, a prisoner must show two things: (1) "the deprivation must be, objectively, 'sufficiently serious;'" that is, "denial of 'the minimal civilized measure of life's necessities;'" and (2) the prison official had a "'sufficiently culpable state of mind;'" that is, "'deliberate indifference' to inmate health or safety." Id., at 834. (Citations omitted.) The Supreme Court rejected an argument that an objective test of deliberate indifference be established.

> We hold instead that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

Id., at 837.

DOP is not comprised of "prison officials;" it is a State agency which awards contracts for the benefit of State government. For Plaintiff to suggest that he is entitled to sue DOP for failing to enforce the Wexford agreement is equivalent to arguing that

6

Case 2:08-cv-01156   Document 112   Filed 07/20/10   Page 7 of 8 PageID #: 1281

every driver of an automobile on a West Virginia road is entitled to sue DOP for failing to enforce every asphalt paving contract for State roads.

The undersigned proposes that the presiding District Judge **FIND** that Plaintiff has failed to show that there is a genuine issue as to any material fact, and that Defendant has shown that it is entitled to judgment as a matter of law.

### RECOMMENDATION

For the reasons stated herein, it is respectfully **RECOMMENDED** that the presiding District Judge **GRANT** the DOP's Motion for Summary Judgment (# 88) and dismiss the DOP with prejudice.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable David A. Faber, Senior United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), the Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections), and then three days (service/mailing), from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection.  Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of <u>de</u> <u>novo</u> review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. <u>Synder v. Ridenour</u>, 889 F.2d 1363 (4th Cir. 1989); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Wright v. Collins</u>, 766 F.2d 841 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984).  Copies of such objections shall be served on opposing parties and Judge Faber.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to Plaintiff and counsel of record.

July 20, 2010
Date

*Mary E. Stanley*
Mary E. Stanley
United States Magistrate Judge